Good morning, Your Honors, and may it please the Court, my name is Ben Wiesinger on behalf of the petitioner Salvador Espinoza-Gonzalez. The government is asking this Court to do something unprecedented, which is to hijack the modified categorical analysis to deport a lawful permanent resident for a crime he didn't commit. Maybe he did, maybe he didn't, but you might want to say for a crime of which he was not convicted. Either way, Your Honor, either way. My client was... They can deport him based on what he's been convicted of, not on what he might or might not have done. That's correct, Your Honor, and that was exactly the Court's statement in Sanchez-Avalos, that the modified categorical analysis, quote, And that doesn't require any penal penetration whatsoever. Correct, Your Honor. That's not necessary to a finding of sexual contact. That's the problem with the case. That's the exact problem with the case, Your Honor. In this case...  I think there is. Your Honor, I'm not familiar with that case. Well, it's a variation on the problem here. It's a more subtle variation. This one's, I think, a stronger case in your favor. But the question is, generally speaking, with respect to convictions, when an admitted fact is part of the plea, which here is a little ambiguous because it's no contest, but an admitted fact as part of the plea is part of the conviction when that admitted fact is not necessary to the conviction. In other words, they're taking aim at our en banc case in the Aguilas. In which one? Aguila. They're taking aim at our en banc decision. The question is whether or not they're going to agree with Judge Kaczynski's dissent. I see, Your Honor. So that question is up in front of the Court as we speak. I'm sorry. What was the name of the case? De Camps. D-E-S-C-H-A-M-P-S. Sounds like a Haitian case. Maybe. Okay. That part I don't know. Well, let me address it this way. It makes no logical or legal or common sense to come back 10 years after a conviction has been final and say that you didn't actually commit the acts, only the acts that you pled guilty to. You did these other things as well. And that speaks to the fundamental fairness question raised in each of these cases, Santos Avalos, Young v. Holder, Aguila Montes de Oca. Each of these cases says why would a defendant try and contest a fact that was not necessary to his conviction? He wouldn't. There's no reason to. It's just the colloquy that occurs after Prosecutor Seuss puts on the initial factual basis, the colloquy that happens afterwards, was this actually alleged, is just as irrelevant as if the state court judge had asked whether the defendant was married. It's not a necessary fact to the conviction. And the trier fact was not necessary, was not actually required to find it. What the trier fact was actually required to find is that my client had unlawful sexual contact with the victim. A very serious crime. I'll be the first to admit it, and it's most likely a crime involving moral turpitude, two of which would render my client deportable. But as a long-time lawful permanent resident, one would not. Now, a guilty plea is an admission of each and every element required to establish the offense. That's this court's decision in U.S. v. Kidder. My client necessarily admitted this really bad fact that he had unlawful sexual contact with the victim. That does not admit anything more than that. And it makes no sense to come back and say, well, because it may be a lesser-included offense, we can go back and look through, dig through police reports or dig through anything else that might suggest something worse happened. It makes no sense to do that, Your Honor. And for the government to suggest so opens a Pandora's box. It opens up the door to the government initiating removal proceedings or removing – I'm sorry, I'm going to use the old-fashioned words deporting to distinguish this case from the previous case. It opens up the door to deporting anybody for crimes which they think they may have committed, not which crimes a court actually found an alien guilty of doing. And I think this court should simply tell the government, I'm sorry, you're way out of line on this case. You cannot deport somebody for a crime unless a court found them guilty of the crime. And I'll reserve my remaining time for rebuttal unless the court has any questions. Okay. I'll let you hear from the government, and then you've saved some time. Thank you. May it please the Court. Lisa Damiano on behalf of the Attorney General. Good morning to you all. The central issue in this case is whether the agency was correct in finding the petitioner is removable as an aggravated felon using the modified categorical approach. Well, he wasn't convicted of an aggravated felony. We know that. Well, using the categorical. Sexual contact is not an aggravated felony. Sexual contact, if that was the crime itself, is not an aggravated felony. That's what he was convicted of. He was convicted of sexual abuse. Sexual abuse. Sexual contact is the element that we're quibbling about right now, whether or not the fact that he forcibly engaged in sexual intercourse with his victim was a necessary fact to finding sexual contact occurred. But you're distinguishing between sexual abuse and sexual contact. Well, sexual contact is the element of sexual abuse. Sexual abuse is the crime. You're just questioning what I'm saying. Yes. So what we're saying is, essentially, whether his sexual abuse conviction necessarily rested on the fact that he forced his victim to have sexual intercourse. What was the necessary fact to find him guilty of sexual abuse? Now, this Court's decision in Aguilamontes used an example. Sexual penetration is not a sine qua non of sexual abuse, is it? No, it's not. That's the point, because sexual contact doesn't include that. Sexual contact, what we argue, is that it's a broad element and that many, many things can encompass sexual contact. How would a trier, a fact, a judge or a jury. . . But it doesn't necessarily require any penetration, penal penetration. Sexual contact doesn't necessarily involve. . . It's not the end of the case. No, it's not, because how does a jury or judge determine that sexual contact occurred? The fact in this case, the only theory of the government's case, was that the action that took place was sexual intercourse. Sexual intercourse is the fact that establishes that sexual contact occurred. Well, if this were a trial, maybe I would feel differently. But this is a plea, and he's pled guilty. And even if I were to adopt your theory of the case, which I'm not sure I can, even if we had a clean admission from him, well, yes, I did this, but we don't even have a clean admission of that. What we have here is a statement by him, yes, that's what she's going to say, and then do you plead guilty to that? That might mean plead guilty to what she said, or it might mean do you plead guilty to the crime to which you're pleading guilty. So I don't even see that you've got, even on your theory of the case, I don't think you've got very much. Okay. Let me start with the Shepard rule, the Shepard documents. To look for the modified categorical approach, we all know that there's a finite list of documents that you can look to, the government can look to, to find, to determine what the conduct was. A plea colloquy is one of those documents. I understand that. But my question is what's said in this particular plea colloquy? He says, yeah, that's what she's going to say. That's what he says. Well, under what we argued is that not only is the fact that it's a no-contest plea indistinguishable from the fact that it would be a guilty plea, so they're indistinguishable under the law. Well, of course. It's a guilty plea with respect to the crime charged. Right. And the crime charged does not necessarily include penetration. I don't see where he admitted that he penetrated her with his penis. Well, in the plea colloquy, the judge asks the prosecutor to determine or to establish the factual basis. I'm sorry. Was it penile penetration that was alleged? Yes, says Mr. Sue. The victim said it was actual intercourse. All right, Mr. Espinosa, do you agree that is what the State's evidence against you would be? I'm not asking you if you agree that's what happened. But do you understand if the matter proceeded to draw Ms. Velazquez would testify as to what Mr. Sue put on record? That's what she would say, the Court. That's what you agree she's going to say? Yes. So he never admitted he did it. He just said that's what she'd say. Well, Your Honor, this exchange occurred in the context of the plea colloquy, and under Arizona law, a factual basis must be established to support it. Sure, but he never admitted that he did it. He doesn't have to admit. You have to under Arizona law, you have to have a factual basis. Then you're just out. Then you're out, Scout. Goodbye. He pled no contest to that plea colloquy. He pled no contest. This was the factual basis to establish the charge he was pleading to. The purpose of a plea colloquy is to determine that an innocent man isn't pleading guilty to something where there's no factual basis to establish that plea. The judge asked a follow-up question. Was there penile penetration? He did so to determine what was the sexual contact. He didn't say yes. The prosecutor said that that's what she would say. That's the theory of the case. That's the theory. Under Aguila-Montes, under Aguila-Montes, in the plea context, it asks what facts the conviction necessarily rested on in light of the theory of the case and as reflected in the Shepard documents, and are those facts necessary to convict. A trier of fact would have to find that some contact occurred. What contact? But not necessarily penetration by a penis. They would have to find some contact, some conduct by the petitioner. Which isn't an aggravated felony unless. Well, they would have to. The judge or jury has to ask what occurred. Are you arguing that he admitted penetration on this record? We argue that the no contest plea establishes those facts being admitted. Oh, well. Next. So you're arguing against the win. Let me ask you this. Do you think that the panel needs to wait for DeCamp to be cut to come down? I don't believe so, Your Honor, but. Why not? Well, under this, I mean, this case we feel falls squarely under Aguila-Montes and that this. Aguila-Montes is up for reconsideration by the Supreme Court. I mean, that's what's in front of the court in DeCamp. Well, I guess I might be mistaken on what the precise issue in DeCamp is. But Aguila-Montes, I don't see the difference between this case and the Court's example in Aguila-Montes where the Court said, here's an example, an aggravated assault offense involving. This is a divided statute. Aguila-Montes was not. That is to say, here we've got two separate claims. We have abuse and we've got rape. Under sexual abuse, what needed to be established was that somebody intentionally or knowingly engaged in sexual contact with a person against their will. I understand that. Right. So we're arguing that the sexual contact is established by the fact that there was intercourse. I thought you were arguing, really trying to put the best spin on your case, that the government is entitled to some type of presumption, as we analyze the sentence here, of that your theory of the case was accepted by the trial court as fact in making a finding of guilt. That's correct. That's what I would imply. You're saying that there is a case that says precisely that. And what is the citation to that case? Well, I was referencing the Aguila-Montes decision, and I was in that decision. Is Aguila-Montes the only case you're relying on for that proposition? Well, I would say that the cases since then, the Sanchez-Avalos and Young, reiterate that in the plea context, you know, we're looking at what facts are necessary in light of the theory of the case. The only theory in this case was that the petitioner engaged in unlawful sexual intercourse, and without finding that fact, a fact finder couldn't convict. The government wouldn't be able to prove its case because no other contact occurred. I guess I misread Aguila's, because I thought Aguila's stood for the proposition that a conviction under a state statute that is missing an element of the generic crime is subject to a modified categorical approach. The Aguila decision does discuss the missing element rule and overrules Navarro-Lopez to that extent, but they also discuss the broad element rule. Theory, this theory of the case. This broad element or missing element. There's a missing element. There's also a broad element. We argue this is a broad element. Sexual contact could be many things. So your argument is that the government's theory of the case controls? I'm saying that in the plea context, the facts necessary in light of the theory of the case and what's in the Shepard documents. Do you have any case at all that says the government's theory of the case? Is it all relevant? Well, in Young, the Court discusses the theory of the case because you have a disjunctively phrased charging document, and they said there's all these theories of the case. The government listed out several theories of the case, and we don't know what the theory is because there's no other Shepard document that sheds light. Here, we have a plea colloquy that narrows the basis for the conviction. In Young, it actually reiterated that a plea colloquy can narrow the basis if the government asserts many different types of theories. Here, we only have one theory. But even on your theory of the case, I'll come back to where we were with the plea colloquy, you were unfortunately for you or for the government's position. I won't say for you or for the government. The government's interest should be justice here, not just winning the case. But unfortunately for your position, you actually had a fairly smart defendant who instead of saying yes when he pled, he said that's what she's going to say, making it very clear that he did not admit that what she said was necessarily what he was admitting to. I see my time's up. May I respond to your honor? Yes, please do. That's why in our brief we argue that first and foremost the no contest plea is similar to the guilty plea and also under Arizona state law that this plea colloquy, this information had to be ascertained by the judge in order to determine there was a factual basis and that the facts satisfied the elements of the conviction. The Shepard document rule says that a plea colloquy could be used and any facts assented to by the defendant. It doesn't have to be a plea colloquy where the defendant assented to facts. It's a plea colloquy and any facts that the defendant assented to. The problem is neither the plea colloquy nor the facts assented to by the defendant prove your theory of the case, unfortunately. Well, your honor, I see my time is up. Okay. We would ask that you deny the instant petition for review. Thank you. Thank you. You have four minutes, but I don't think you need them all. Well, with respect, your honor, I agree with my colleague, Mr. Damiano, that the Aguila Montes case does suggest that where the government's theory of the case is the only theory presented, that that can form the factual basis of a conviction. That's what this Court said in that case. Here's the problem with that, though. Where is that language that you're readily assenting to? Please, could you read that to us? Sometimes people shouldn't get up. Sometimes they do their very best to snatch defeat from the jaws of victory, but go ahead. I'm fairly confident in our position, your honor. Without going through the rather lengthy decision of Aguila. You know, I'm sorry, but I'm visiting and I'm not as familiar as my colleagues with the precise language of your cases. So it would be really helpful to me if you'd give me the precise language that talks upon which you're assenting to the proposition that the theory of the case is not the factual basis of the plea controls. That can be. Can be, not is. Fine. Find me the language. I actually sat at a Yale Boot Court competition with Judge Kaczynski once when 14 minutes of the 15 minutes was consumed by one question by Judge Kaczynski asking to please give him the language. And maybe I picked up on Judge Kaczynski. And please excuse me, members of the panel. In the plea context, if the trier of fact was required to find that a defendant used a gun in the course of assaulting a victim. In other words, if, and that's on page 936 and 937. Here you go. 936 and 937. It's on page 936 and 937. It's right there. Let me explain the problem with that theory, though. It's because sexual contact can supposedly encompass all these other acts. That is what's wrong here. Quote, any direct or indirect touch. I think you're in the process of persuading me that I need to wait for the Supreme Court to say something in Descamps. Because Aguilamontes, that question is in front of the Court. Now, how they're going to answer it, it may be that everything, I mean, even if they absolutely affirm it, you may win in any event. But I'm inclined to wait for the Supreme Court. And let me address that, Your Honor. I thought you said you weren't familiar with Descamps. Let me address that in a different way, Judge Lucero. You want another shovel? My client is trying to dig his way back into the United States. He was deported on February 23, 2010. He's been in Mexico since then, eking out a living, his family supporting him, not the other way around. I thought you told us that your client was a bad guy who did bad things, and the only question was whether there was penetration in the bad things that he did. So are you now going to tell us that he's not a bad guy, he's a good guy? That's correct, Your Honor. He pled guilty to a serious felony. He completed his probation and was discharged there from, just like any other offender. Now, the job of this court is simply to tell the government, I think, that the modified categorical analysis doesn't even apply in this case. We have a categorical crime of rape as an aggravated felony. Once those elements are not found in this case, the question is over. Once it's found that my client was not convicted of that crime, the inquiry is over. Period. So I will stop digging. Okay. And I've got a little bit of gratuitous advice for your client. If, in fact, he is to prevail on this one, tell him not to shoplift. Yes, sir. Meaning that will be a second CIMT. Yes, sir. Absolutely. I'll pass that along. Hopefully I'll see him soon. Thank you, Your Honor. Thank both sides for your arguments. Espinoza-Gonzalez v. Holder is now submitted for decision. The next case on the argument calendar, United States v. Rodriguez-Espinoza.
judges: Trott, Lucero, Fletcher